## Maron's Estate.

*Wills — Powers of appointment — Gift over in default of appointment — Words of exclusion—Accrued shares.*

1. The testator left three equal fourth parts of his residuary estate in trust for each of three of his children, A, B and C, for life, with limited power in each such child dying without issue to appoint the remainder of his or her share, or any part thereof, to a certain named grandchild E, or her issue, and in default of appointment the share of each child was to be held upon the same terms of trust as provided for the other children and their issue, excepting therefrom the said grandchild E and her issue. A one-eighth share was left in trust for a son D for his life, with limited power of appointment in favor of said grandchild E (a daughter of D) and her issue, in case of D's death without other issue than E and her issue, and in default of appointment said share was to be held upon the same terms of trust as provided for the shares of the other children, A, B and C, and their issue. The other one-eighth share was left in trust for the children and issue of D (including E), and if at any time there should cease to be any children or issue of D, then the said share was to be held upon the same terms of trust as provided for the one-eighth share held in trust for D. B died in 1917 without issue, having by will appointed three-fourths of her share to E. D died in 1926 without children or issue, other than E and her issue, having by will exercised his power of appointment in favor of E: *Held*, The increments to the trusts for D and for the children and issue of D which came from the unappointed portion of B's share should be held in trust for A and C.

2. In such case, the exception of E adheres to the increments, or accrued shares, which came from the unappointed portion of B's share. This exception overrides a direct gift, as in the case of the trust for the children and issue of D, and an indirect gift through the exercise of D's power of appointment over his share.

3. Gifts over in default of appointment are vested subject to being divested by the exercise of the power of appointment. When the exercise of a limited power of appointment is impossible as to accrued shares by reason of the exclusion of the only possible appointee, there is no power to appoint such accrued shares and no divestiture of the estates created by the gift over in default of appointment.

Exceptions to adjudications. O. C. Phila. Co., July T., 1916, No. 312.

Conrad Maron died in 1914. By his will he divided his residuary estate (after providing for his widow, who took against the will) into four equal parts. The income from each of three of said equal parts was to be paid to each of his three children, Alfred C. Maron, Emily Maron and Laura Maron, for life. The provisions of the will relating to the trust for his daughter, Emily Maron, were as follows:

"(3) And to pay the income of another of said equal parts to my daughter Emily Maron for the term of her natural life and upon the death of the said Emily Maron then to assign, transfer and pay over the principal of the said estate held in trust for her to such of her children and the issue of any of her deceased children as may be living at the time or times of the distribution of the said share, equally absolutely *per stirpes*. And if there should be none of her children or the issue of any of her deceased children living at the times of distribution as aforesaid, then my said daughter shall have a limited right of disposition thereof and may by last Will and Testament, or any writing in the nature thereof signed by her, direct, limit and appoint that the whole or any part of the said share of the said residuary estate held in trust for her shall be paid to Marcelle Maron or her issue living at the death of the said Emily Maron in such parts or shares as she may provide; and in default of such appointment then the said share of the said residuary estate shall be held upon the same terms of trust as are hereinafter provided for my other children and their issue, excepting therefrom the said Marcelle Maron and her children and issue."

The fourth equal part of the residuary estate was provided for as follows: "(5) To divide the remaining one-fourth of said two-thirds part of my residuary estate into two equal shares. And in trust to pay the income of one of said shares to my son Conrad Maron for the term of his natural life, and upon the death of the said Conrad Maron then to transfer, assign and pay over the principal of the said share to and among such of his children and the issue of any of his deceased children as may be living at the time or times of distribution of the said share equally absolutely per stirpes, excepting therefrom his daughter Marcelle Maron and her issue. And if there should be none of the children or issue óf deceased children of my said son Conrad Maron, living at the times of said distribution, other than the said Marcelle Maron and her issue, then my said son Conrad Maron shall have a limited power of disposition over the said one-eighth part of said two-thirds of my residuary estate, that is to say my said son Conrad Maron may by his last Will and Testament, or any writing in the nature thereof signed by him, direct, limit and appoint that all or any part of the said one-eighth part of two-thirds of my¦ said residuary estate shall be paid to the said Marcelle Maron and her issue living at his death in such proportion as he may provide, and in default of such appointment then the said one-eighth part of said two-thirds of my said residuary estate shall be held upon the same terms of trust as are above provided for the shares limited in trust for my other children, Alfred C. Maron, Emily Maron, and Laura Maron and their issue.

"And in trust to hold the other one-eighth of said two-thirds part of my said residuary estate until the death of the survivor of my said four children and my grand-child Marcelle Maron, and to pay the net income thereof in equal quarterly payments during the period of the said trust to such of the children and the issue of any deceased children of my said son Conrad Maron as may be living at the respective quarterly periods of distribution, including therein the said Marcelle Maron or her issue, and if at any time during the period of the said trust there should cease to be any children of my said son Conrad Maron or the issue of any of his deceased children, then the said trust estate shall cease and determine and the said one-eighth part of two-thirds of my residuary estate shall be held upon the same terms of trust as are next hereinbefore provided for the other one-eighth part of two-thirds of my residuary estate held in trust for my said son Conrad Maron for his life with remainder as above provided.

"Upon the death of the survivor of my said four children and grand-child Marcelle Maron, the principal of the said one-eighth of two-thirds of my residuary estate shall be distributed to such of the issue of my said son Conrad Maron as may be living at the time or times of distribution equally absolutely per stirpes, including in said distribution the issue, if any, of said Marcelle Maron."

He further provided:

"(6) If at the time of distribution of any of the various trust estates above provided there should be none of my grand-children or issue of any of my deceased grand-children living at the time of distribution so as to take thereunder, then I direct that the income of my entire residuary estate shall be paid to my said wife Anna Maron, if she should be then living, for the term of her natural life and after her death my said Executor and Trustee shall convert the whole of the said estate into cash and transfer, assign and pay over the whole of the said estate to the following named charities in fee and absolutely, namely," (Various charities were mentioned, the names of which are omitted for the sake of brevity.)

## Maron's Estate.

Emily Maron died Aug. 12, 1917, without issue. In her will she appointed the principal of one-fourth of her share to Marcelle Maron (Marcelle Maron McVeigh), and declared it to be her intention not to exercise the power as to the remaining three-fourths of the share.

Conrad Y. Maron, referred to in testator's will as Conrad Maron, a son of testator, died Dec. 14, 1926, without other issue than his daughter, Marcelle Maron McVeigh, and her issue, having by will exercised his power of appointment in her favor.

The question before the court concerned the disposition of the increments to the trust for Conrad Y. Maron and to the trust for the children and issue of Conrad Y. Maron. These increments or accrued shares came from the unappointed portion of the share originally held in trust for Emily Maron.

There were two adjudications relating respectively to these two accrued shares, which awarded both accrued shares to the charities mentioned in the provisions of testator's will last quoted above. The adjudications decided that the increment to the trust for the children and issue of Conrad Y. Maron which came from Emily Maron's unappointed share became subject to the same terms as the increment to the trust for Conrad Y. Maron; that Marcelle Maron McVeigh was excluded in the distribution of both increments; that they would not pass under the limitation over in default of appointment in the provisions of testator's will setting up the trust for Conrad Y. Maron; and that they should be awarded to the charities under the provisions of testator's will last above quoted.

Exceptions were filed to both adjudications on behalf of Alfred C. Maron, Laura Maron and Mae Vanderslice, guardian *ad litem* for Don Edward Maron, son of Alfred C. Maron; and separate exceptions were filed on behalf of Marcelle Maron McVeigh, and W. Le Roy McKinley, guardian *ad litem* for the children of Marcelle Maron McVeigh.

*John B. Gest*, for Alfred C. Maron, Laura Maron, and Mae Vanderslice, guardian *ad litem* of the estate of Don Edward Maron, exceptants.

*Frederick J. Knaus*, for Marcelle Maron McVeigh, exceptant.

*W. Le Roy McKinley*, guardian *ad litem* of the estates of Desiree Marthe Couser, Leona Mary McVeigh and Joan Laura McVeigh, exceptant.

*Theodore Paul, I. Hazleton Mirkil, John Hempill, Spencer Ervin, Bartram A. Owen, C. S. Wesley, Williams & Sinkler, John Sinclair, John Arthur Brown, Joseph H. Grubb, Biddle, Paul, Dawson & Yocum, Frank B. Rhodes, John C. Hinckley, J. Claude Bedford, Franklin Spencer Edmonds, J. Warren Brock, Rodney Bonsall, Carroll R. Williams* and *James M. West*, contra.

VAN DUSEN, J., Feb. 17, 1928.—When testator gave to Emily a power to appoint her share to Marcelle, he took care that her decision should be final and that Marcelle should not take through the gift over in default of appointment. To the latter, therefore, he added the prohibition "excepting therefrom the said Marcelle Maron and her children and issue." It was argued that this was intended only to prevent any part of Emily's share from falling into the trust for Conrad's children, of whom Marcelle was one. But we notice that in the case of Conrad's share the gift over in default of appointment is not to the other trusts generally, but to the trusts for Alfred, Emily and Laura by name, excluding the share of his own children by failure to name it. If that was all he wanted to accomplish as to Emily's share, he could have done it in the same way. The exception is so expressed as to admit of no further exception, and must adhere to Emily's share to the end

as it finds its way through the other trusts. It must, therefore, override both a direct gift to Marcelle and her issue such as is found in the trust for Conrad's children and an indirect gift through Conrad's power of appointment. The exceptions of Marcelle Maron McVeigh and W. Le Roy McKinley, guardian *ad litem* for her children to both adjudications, are dismissed.

For this reason, Conrad had no power to appoint to Marcelle the share which accrued from Emily to his trust, as he attempted to do. Testator gave Conrad's share "in default of appointment" to the shares of Alfred, Emily and Laura. In my adjudication, I concluded that this clause did not apply to Conrad's share accrued from Emily, because there was no default or failure of appointment. There was no power to appoint at all; and the contingency did not, and never could, affect this share.

But the court *in banc* are convinced that this is too literal a reading. In Evans's Estate, 10 Dist. R. 261; Freeman's Estate, 15 Dist. R. 928, 35 Pa. Superior Ct. 185, and Ritchie's Estate, 24 Dist. R. 510, the view is expressed that gifts over in default of appointment are the primary dispositions of the testator and are vested, subject only to be divested by the exercise of the power. If there is no power to appoint at all, there can be no divestiture. When we read the further gift of the testator of his *entire* estate to charities in the event that there is no grandchild entitled to take under the will, we see that he thought he had so provided that if there were grandchildren (excluding Marcelle and her issue), they would take the whole, and that the charities would take—not piecemeal, as portions which he had otherwise omitted to provide for fell out, but the whole when the lines of the blood were extinct. From these considerations, we conclude that the shares accrued from Emily to Conrad and to Conrad's children fall into the shares of Alfred and Laura and do not go to the charities.

The exceptions of Alfred C. Maron, Laura Maron and Mae Vanderslice, guardian *ad litem* of Don Edward Maron, to both adjudications are sustained, and distribution is directed in accordance with this opinion.